**Polly COUCH, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**Civ. No. L 82–0013.**

United States District Court, N.D. Indiana, Hammond Division.

Dec. 28, 1982.

652

Philip Burchett, Lafayette, Ind., for plaintiff.

R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., for defendant.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This is an action for judicial review of a final decision of the defendant Secretary of Health and Human Services simultaneously denying plaintiff's applications for a period of disability and disability insurance benefits pursuant to Title II, Section 216(i) and 223 of the Social Security Act (hereinafter "Act"), and for disabled widow's benefits as provided by Section 202(e) and 223 of the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 402(e); 42 U.S.C. § 423.

Plaintiff filed applications for a period of disability and disability insurance benefits and for disabled widow's benefits on March 27, 1980 and June 16, 1980, respectively, alleging that she became unable to work in January of 1974, at age 44 (Tr. 222–231). Prior to her current applications, on November 20, 1974, plaintiff filed applications for disability insurance benefits and for Supplemental Security Income (hereinafter "SSI") pursuant to Title II and Title XVI of the Act, alleging that she became disabled in January of 1974, due to the same ailments of which she now complains (Tr. 95–98). A period of disability, beginning on May 18, 1974, was subsequently established (Tr. 175). In February of 1978, plaintiff was notified that current medical evidence demonstrated that she had regained the ability to engage in substantial gainful activity in February of 1978 (Tr. 176, 185) and her benefits were terminated accordingly. Thereafter, pursuant to plaintiff's timely request, a hearing was held before an Administrative Law Judge (hereinafter "ALJ") and on October 17, 1978 the ALJ found that plaintiff's benefits were properly terminated because she was no longer disabled as of February 7, 1978 (Tr. 210–215). The ALJ's decision became the final decision of the Secretary of Health and Human Services when the Appeals Council approved that decision on December 8, 1978 (Tr. 217–218).[1]

Plaintiff's current applications for disability insurance benefits and for disabled widow's benefits were denied initially (Tr. 232–233)[2] and on reconsideration (Tr. 239–240) by the Office of Disability Operations of the Social Security Administration after the Indiana State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found that plaintiff was not under a disability. The ALJ, before whom plaintiff, her attorney, her witness, and a vocational expert appeared, considered the case *de novo,* and on July 30, 1981, found that plaintiff was not under a disability (Tr. 12–26). The ALJ's decision became the final decision of the Secretary of Health and Human Services when the Appeals Council approved that decision on February 5, 1982 (Tr. 5–6).

To qualify for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, an individual must meet the insured status requirements of these Sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. 42 U.S.C. § 423.

A widow must also meet the requirement of Section 223(d)(2)(B) which provides that she shall not be under a disability unless her physical impairment is of a level of severity which under regulations prescribed by the Secretary is deemed sufficient to preclude an individual from engaging in any gainful activity. 42 U.S.C. § 423(d)(2)(B).

The only issue before the court in this action is whether the final decision of the Secretary is supported by substantial evidence.

Establishment of a disability which would entitle plaintiff to benefits under the Social Security Act is a two-step process. First, there must be a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

---

1. Although plaintiff was advised of her right to contest the decision of the Secretary in a civil action before a United States District Court (Tr. 217–218), plaintiff declined to commence such an action. Since plaintiff failed to request timely judicial review of the Secretary's final administrative decision, that decision became final and binding and is not now before the Court for review in the instant civil action. 20 C.F.R. § 404.981, 416.1481 (1982); *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

2. Plaintiff also filed an application for SSI benefits in March of 1980 (not in the record) and thereafter began receiving benefits on the basis of this claim in July of 1980 (Tr. 37). Plaintiff's SSI benefits are not affected by the present controversy concerning her entitlement to disability or disabled widow's benefits. Therefore, there is currently no issue pertaining to plaintiff's SSI benefits before the Court in this action. *Califano v. Sanders, supra.*

months; and second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. 42 U.S.C. § 423(d)(1)(A), (2)(A); *McNeil v. Califano,* 614 F.2d 142 (7th Cir.1980); *Lieberman v. Califano,* 592 F.2d 986 (7th Cir.1979).

■ It is settled law that the burden of proof rests upon the plaintiff to establish entitlement to disability insurance benefits under the Social Security Act. *Johnson v. Weinberger,* 525 F.2d 403 (7th Cir.1975). In order to do so, plaintiff must establish that she became "disabled" within the meaning of the Act prior to the expiration of her insured status. *Jeralds v. Richardson,* 445 F.2d 36 (7th Cir.1971). Plaintiff's earnings record shows that she last met the earnings requirement on December 31, 1978 (Tr. 245). Therefore, plaintiff must establish that she was disabled on or before December 31, 1978 in order to prevail on her claim for disability benefits.

Plaintiff was 52 years old at the time of the administrative hearing and had experience as a waitress, a cashier, and a factory worker (Tr. 43–49). Plaintiff alleges complete disability as of January of 1974 due to problems with her back, feet, and nerves (Tr. 222).

■ The record reveals that this action stems in part from plaintiff's application for a period of disability and disability insurance benefits based on the same alleged impairment and the same alleged onset date as her prior 1974 application, for which she established a period of disability and already received disability insurance benefits (Tr. 222–225, 95–98). However, her period of disability terminated in February of 1978, and this administrative determination was reviewed by an ALJ and affirmed after full *de novo* consideration, which included a hearing on the merits, of plaintiff's claim. The ALJ rendered his decision regarding plaintiff's previous termination on October 17, 1978 (Tr. 210–215). Once a period of disability is established and then subsequently terminated, there is no presumption of continued disability. Clearly if there was such a presumption *following* a proper

termination of benefits, it would render the termination invalid. Rather, it is well recognized that final determinations, with respect to prior applications for disability benefits, establish for the purpose of a later application that the individual claiming benefits was not under a disability for the period covered by the final administrative decisions on the earlier applications. *Borg v. Weinberger,* 381 F.Supp. 1212 (E.D.Mich. 1974), aff'd, 510 F.2d 972 (6th Cir.1975). It is therefore established that plaintiff was not under a disability as of October 17, 1978, the date of the final decision with respect to her prior application (Tr. 210–215) and there is no presumption that her previous disability continued beyond that point. Rather, it is established that her disability not only did not continue, but in fact that it had ended in February of 1978 and that plaintiff continued to be "not disabled" through October 17, 1978. That decision is final and binding and not now before the Court and the Court has no jurisdiction to review the actions of the Secretary on that earlier claim. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). While the Secretary may waive the res judicata effect of an earlier application by reopening the prior application and issuing a decision on its merits, the ALJ explicitly based his decision denying plaintiff's claim for disability insurance benefits on her current March 27, 1980 application (Tr. 18).

■ In addition, the record reveals that plaintiff's insured status expired on December 31, 1978 (Tr. 245). Any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability insurance benefits. *Jeralds v. Richardson,* 445 F.2d 36 (7th Cir.1971). Plaintiff must establish that a severe medically determinable impairment that rendered her incapable of performing any substantial gainful activity existed between October 17, 1978 and December 31, 1978.

■ Plaintiff's original period of disability was established on the basis of several

physical impairments in conjunction with a serious emotional problem (Tr. 171–175). Plaintiff's physical impairments, which were not disabling in and of themselves, included osteoporosis of the lumbar spine, degenerative arthritis of the lumbar spine, and diverticulosis of the colon (Tr. 171–175, 145). In his October 17, 1978 decision, the ALJ found that plaintiff's emotional problems were in remission to the point that she had regained the ability to engage in her former occupations and that her physical impairments were minimal (Tr. 214). Claimant has submitted no medical evidence to show that her condition worsened between October 17, 1978 and December 31, 1978. The law established that the burden of proof rests upon the plaintiff to establish her entitlement to disability insurance benefits under the Act. *Lieberman v. Califano, supra, Wroblewski v. Califano,* 609 F.2d 908 (7th Cir.1979). However, plaintiff has not submitted any medical report covering the time period in question. Plaintiff cites medical reports dated prior to October 17, 1978, and attempts to argue that these reports verify a period of disability existing between October 17, 1978 and December 31, 1978. These earlier medical reports have already been evaluated and taken into consideration by the ALJ before rendering his decision on October 17, 1978 affirming plaintiff's prior termination. Therefore these reports are not pertinent in connection with her current application for disability insurance benefits. The same medical evidence which warranted the earlier denial cannot now be viewed as warranting a finding of disability. The medical report dated May 30, 1978 from Dr. Pfrommer stands in the same position as the others (Tr. 342–343). With respect to her current application, the ALJ evaluated Dr. Pfrommer's report yet found that it did not warrant a re-opening of the earlier claim. Administrative decisions regarding the re-opening of prior claims are properly in the province of the Secretary and are not the proper subjects of review by this Court. *Califano v. Sanders, supra.*

■ In addition, there is an absence of medical reports from mid-1978 to March of 1980, the month in which plaintiff filed her present application. Those reports covering the years 1980 and 1981 shed no light on plaintiff's medical condition from October 17, 1978 to December 31, 1978 (Tr. 282–283, 285–291, 292–293, 344–345). Therefore, plaintiff has failed to carry her burden of establishing the existence of a severe medically determinable physical or mental impairment from October 17, 1978 to December 31, 1978, and the decision of the Secretary is supported by substantial evidence.

In enacting benefits for disabled widows, Congress made clear its intent as to what the standard of disability necessary to establish entitlement to such benefits should be. Thus, in reporting the Social Security Amendments of 1967, the Committee on Ways and Means of the House of Representatives stated as follows:

> Under your committee's bill, a new test of disability which is *more strict* than the definition which applies to workers would be provided for purposes of widow's and widower's benefits.

> \*       \*       \*       \*       \*       \*

> The bill would also provide reduced benefits (as discussed in the statement on benefits for disabled widows and widowers) for certain disabled widows (including surviving divorced wives) and disabled dependent widowers under an initial test of disability that is different from that for disabled workers and childhood disability beneficiaries. *Under this test, the Secretary of Health, Education, and Welfare would by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any "gainful activity." (As opposed to "substantial gainful activity").* An individual whose impairments meet the level of severity established by the regulations of the Secretary would generally be found to be disabled although, of course, if other evidence establishes ability to engage in substantial gainful activity despite such impairments, he would not be found disabled, and individuals whose impairments do not meet

this level of severity may not in any case be found disabled. Once an individual meets the initial test and is found disabled, he would be considered disabled as long as his impairment precluded his engaging in substantial gainful activity. (Emphasis supplied.) H.R. No. 544, pages 26, 31, 90th Cong., 1st. Sess.

So, too, the Senate Finance Committee stated in pertinent part:

The bill would also provide benefits (as discussed in the statement on benefits for disabled widows and widowers) for certain disabled widows (including surviving divorced wives) and disabled dependent widowers under a *test of disability that is somewhat more restrictive than that for disabled workers and childhood disability beneficiaries. The determination of disability in the case of a widow and a widower would be based solely on the level of severity of the impairment. Determinations in disabled widow and widower cases would be made without regard to nonmedical factors such as age, education, and work experience, which are considered in disabled worker cases.* Under this test, the Secretary of Health, Education, and Welfare would by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any "substantial gainful activity" (as opposed to "gainful activity" as provided in the House bill). An individual whose impairments meet the level of severity established by the regulations of the Secretary would generally be found to be disabled although, of course, if other evidence establishes ability to engage in substantial gainful activity despite such impairments do not meet this level of severity may not in any case be found disabled.

(Emphasis supplied.) Sen.Rpt. No. 744, pages 49–50, 90th Cong., 1st. Sess., U.S. Code Cong. & Admin.News 1967, pp. 2834, 2883.

Section 223(d)(2)(B), *supra,* which in accordance with the foregoing legislative policy, authorizes the Secretary to determine the levels of severity which demonstrate an inability to engage in gainful activity is plainly valid. *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *White v. United States,* 395 F.2d 5 (1st Cir.1968). In particular, authorization to the Secretary to establish appropriate regulatory standards for entitlement to Title II benefits has been recognized. *Kasparek v. Gardner,* 409 F.2d 214 (9th Cir.1969).

■ The burden of proof rests upon the plaintiff to establish her entitlement to disabled widow's benefits. *Zanoviak v. Finch,* 314 F.Supp. 1152 (W.D.Pa.1970). The burden is not on the Secretary to prove the absence of disability. *Wright v. Richardson,* 320 F.Supp. 931 (W.D.Va.1970). Furthermore, it is well settled that if there is substantial evidence to support the decision of the Secretary, then her decision must be upheld. *Truss v. Richardson,* 338 F.Supp. 741 (E.D.Mich.1971). A comparison of her condition as diagnosed by doctors who examined her with the standards set forth in the Regulations makes clear that she does not meet the requisite level of severity in the listings.

■ The regulatory standards established by the Secretary provide that a widow shall not be found disabled unless her impairments are demonstrated by specific clinical findings that meet, or are medically equivalent to, those delineated in the Listing of Impairments in Appendix 1. 20 C.F.R. § 404.1578(a)(1) (1982). In the present case, plaintiff alleges that she is disabled and entitled to disabled widow's benefits solely on the basis of a psychological impairment. However, there is substantial evidence supporting the Secretary's finding that plaintiff's psychological problems are not of such severity as to meet or equal the listings.

The medical evidence pertaining to plaintiff's psychological condition prior to October 17, 1978 has already been evaluated and found to be insufficient to establish disability even under the more lenient standard applicable to disabled workers. Therefore, that same medical evidence is clearly insufficient to establish disability under the stricter standard applicable to disabled wid-

ow's benefits. Since it is the insured status of plaintiff's deceased ex-husband that provides qualification for these benefits should she meet the other requirements of the Act, and there is no question that her ex-husband died fully insured, there is no issue regarding insured status. Therefore, in order to prevail in her claim for disabled widow's benefits, plaintiff must establish the existence of a psychological impairment of such severity as to meet or equal the listings which had its onset anytime after October 17, 1978. Finally, the fact that plaintiff is currently receiving SSI benefits, and has been receiving same since July of 1980 must be noted (Tr. 22). However, this is no way indicative of any impairment of the severity necessary to establish entitlement to disabled widow's benefits. On the contrary, to establish entitlement to SSI benefits, a claimant need only show the existence of a severe impairment which, in light of that person's age, education, and past work experience, renders him incapable of performing substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A). However, highly significant vocational considerations of age, education, and past work experience are not relevant to the determination of whether a claimant is entitled to disabled widow's benefits. Instead, such a claimant must establish entitlement solely on the basis of the level of severity of the impairment as evidenced by clinical and laboratory medical evidence that meets or equals the criteria set forth in the listings. 20 C.F.R. § 404.1578(a)(1) (1982).

The medical record reveals that plaintiff has a history of chronic depression for many years, but that it has abated over the past few years to the point that it is no longer severe. In support of her argument that she currently has a psychological impairment of the severity necessary to meet or equal the listings, plaintiff relies almost entirely on medical opinions rendered in 1975 and 1976. For example, plaintiff refers to the statements of Dr. George Marsh, a physician who treated plaintiff "over a long period of time," as verifying current psychological impairment (Brief for Plaintiff at 27). However, Dr. Marsh's first statement to the effect that plaintiff was disabled due to psychological problems was rendered following an office visit on January 21, *1975* (Tr. 127). The second such statement was dated July 1, 1975 (Tr. 137), and the third and final one was dated September 1, 1976 (Tr. 165). Similarly, plaintiff relies on the October 11, *1974* report of Dr. J. Gossard, the February 14, *1975* report of Dr. A. Riker, the August 7, *1976* report of Dr. W. Van Den Bosch, and the November 30, *1977* report of Dr. S. Ash (Brief for Plaintiff at 27–28). Plaintiff's reliance on these reports is misplaced for two major reasons. In the first place, they say nothing of plaintiff's current psychological condition. Secondly, this evidence, as previously noted, was thoroughly evaluated and considered by the ALJ before he issued his decision on October 17, 1978 finding that plaintiff was not disabled, even under the more lenient standard applicable to workers' disability insurance cases (Tr. 210–215). Therefore, it is established that plaintiff did not have a severe psychological impairment as of October 17, 1978 and this determination is binding and final and not now before the Court. *Califano v. Sanders, supra.*

With respect to the medical evidence submitted by plaintiff in support of her current applications, there is not one medical opinion indicating that plaintiff is disabled by virtue of any psychological impairments. There are no current statements from any of the physicians who had earlier reported severe psychological difficulties, with the exception of a statement from Dr. Van Den Bosch, who reported that he has not seen plaintiff since August of 1976 (Tr. 284). Current medical reports from the following physicians appear in the record: Dr. J. Hoover, a podiatrist who treats plaintiff for structural deformities in her feet (Tr. 282–283); Dr. D. Kaufman, a general practitioner who referred plaintiff to an orthopedic surgeon for her physical ailments and noted that plaintiff's ability to understand, retain, and carry out simple instructions was "normal" (Tr. 285–291); Dr. J. Lind, an orthopedic surgeon (Tr. 315), who conducted a complete physical examination yet noted no

**658**

psychological difficulties (Tr. 292–298); and Dr. L. Lempke, an orthopedic surgeon (Tr. 314) who has treated plaintiff since 1972 and who reported in August of 1980 that aside from plaintiff's low back pain he knew of no other medical problems that would significantly reduce plaintiff's ability to work (Tr. 310–311). The recent medical evidence contradicts plaintiff's contentions of a severe psychological impairment that would meet or equal the listings.

In addition, plaintiff's own testimony at the administrative hearing refutes her present contention. Plaintiff's attorney asked her whether "the main cause of your problems that you can't work is because of your back and your feet, is that right" (Tr. 54)? Plaintiff's response was affirmative, that it was her "feet" (Tr. 55). Yet the ALJ did not find that plaintiff's foot problems or any other physical impairment was of such severity as to meet or equal that listing and plaintiff does not dispute this finding. Rather, plaintiff contends that it is her psychological impairment that meets the requisite level of severity. However, the medical record clearly contradicts this contention and supports the finding of the ALJ. Plaintiff's own testimony never even insinuated that she suffered from a current severe psychological disorder. Moreover, there is no indication that plaintiff is currently under psychiatric care or that she has sought or received any such treatment subsequent to the October 17, 1978 decision of the ALJ who found that she was not disabled. Plaintiff has failed to carry her burden of proof to establish entitlement to disabled widow's benefits and this determination is amply supported by the record.

It is the responsibility of the Secretary under the Social Security Act to weigh the factual evidence and to resolve any conflicts therein. Judicial review of the Secretary's determinations is limited to scope by Section 205(g) of the Act, 42 U.S.C. § 405(g) which provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..." The United States Supreme Court has held that "substantial evidence" is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). It is not the function of the court in a judicial review of such an administrative action to appraise the evidence *de novo.*

The Secretary's decision denying benefits under the Act is supported by substantial evidence in this record and is affirmed, and that defendant's motion for summary judgment is granted.

SO ORDERED.