19 F.3d 22
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ruthann RICE, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-2442.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 2, 1994.*
Decided March 8, 1994.
 
 Before CUDAHY, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 The Secretary of Health and Human Services denied Ruthann Rice's application for disability insurance benefits under the Social Security Act. 42 U.S.C. Secs. 416, 423. Rice sought judicial review, and the magistrate judge granted summary judgment in favor of the Secretary. We agree that the Secretary's decision is supported by substantial evidence, Sample v. Shalala, 999 F.2d 1138, 1141 (7th Cir.1993), and AFFIRM for the reasons stated by the magistrate judge.
 
 MEMORANDUM OF DECISION AND ORDER
 
 2
 COSBEY, United States Magistrate Judge.
 
 I. INTRODUCTION
 
 3
 This matter is before the court[1] on the Defendant's, Donna E. Shalala, Secretary of Health and Human Services (the "Secretary"), "Memorandum In Support Of The Secretary's Decision," filed on October 22, 1992.[2] The Plaintiff, Ruthann Rice ("Rice"), filed a response brief on February 1, 1993, and the Secretary filed a reply on February 22, 1993. On March 4, 1993, Rice filed a sur-reply. The court has now reviewed all the briefs and is prepared to rule. For the reasons set forth below, the Magistrate Judge finds that the Secretary's decision to deny Rice Disability Insurance benefits should be AFFIRMED.
 
 II. PROCEDURAL BACKGROUND
 
 4
 On November 13, 1990, Rice filed an application for Disability Insurance ("DI") benefits. (Tr. 65) Rice claimed that she became disabled as of April 4, 1990, and described her disabling condition as "severe degenerative arthritis agravated [sic] by fibromyaliga." (Tr. 95) Rice reported in a November 4, 1990, Disability Report that after approximately an hour of activity her neck and back would become so painful that she would be forced to lie down. (Tr. 95) Rice's application for DI benefits was originally denied on December 21, 1990. (Tr. 69) Rice filed a request for reconsideration of her application on February 22, 1991, which was denied on March 15, 1991. (Tr. 71, 74) With this latter denial, Rice was sent notice that her claim had been independently reviewed by a physician and disability examiner employed by the government, both whom concluded that the denial of her claim was proper. Id.
 
 
 5
 On March 20, 1991, Rice filed a request for a hearing on the denial of her application for DI benefits. (Tr. 76) This request was granted and a hearing was held on December 19, 1991, before the Honorable Ann C. Grover, Administrative Law Judge ("ALJ"). (Tr. 12, 27, 33) Rice appeared at the hearing and was represented by her attorney at that time, Wade Bosley. At the hearing, the ALJ heard testimony from Rice, John Rice (the claimant's husband), and Robert Barkhaus, a vocational expert ("VE").
 
 
 6
 Despite finding that Rice suffers from severe chronic pain syndrome in her back, neck and shoulder areas, the ALJ concluded that she did not have an impairment or combination of impairments listed in or equal to one found in the Listings. (Tr. 19) See 20 C.F.R. Part 404, Subpt.P., App. 1. The ALJ further found that Rice's ability to engage in the full range of light work was reduced by certain physical and non-exertional limitations. (Tr. 20) Nevertheless, the ALJ determined that since Rice retained the Residual Functional Capacity ("RFC") for light work, albeit not a full range of light work, she was not disabled within the terms of the Social Security Act.[3] (Tr. 20) The ALJ's determination that Rice could perform a substantial number of jobs, despite her limitations, is consistent with the VE's testimony at the hearing.
 
 
 7
 On May 21, 1992, the Appeals Council declined Rice's request to review the ALJ's decision, and the ALJ's ruling thereby became the final decision of the Secretary. (Tr. 4-5) Having exhausted all of her administrative remedies, Rice seeks the present judicial review.
 
 III. FACTUAL BACKGROUND
 
 8
 Rice was born on April 21, 1940, and she was 51 years old on the date of the administrative hearing. (Tr. 36, 65) Rice stood 5' 1" tall and weighed 162 pounds. (Tr. 36) Rice testified at the hearing that her educational background included one year of college. Id. As a result of her alleged ailments, Rice testified that she had not worked since April 1990. (Tr. 37)
 
 
 9
 Rice stated that she was last employed as an inspector for Airfoil Textron Corp ("Airfoil"). Id. She was employed by Airfoil from September 1975 until the alleged onset of her disability in April 1990. (Tr. 85) Her last position with Airfoil required her to visually inspect jet engine blades for imperfections and involved lifting trays of engine blades weighing up to fifty pounds. (Tr. 38) Because the blades were located on the floor, she would have to bend over to pick them up.
 
 
 10
 Prior to that position, she was employed by Airfoil to use gauges to inspect the blades. (Tr. 38) This position required her to raise her arms and shoulders up. Id. This position also required her to lift trays weighing anywhere from fifteen to fifty pounds. (Tr. 39) Rice held that position for five years. Id. Finally, Rice characterized her very first job with Airfoil as a polisher or grinder. (Tr. 39) Rice testified that she would sit at a machine with a sandpaper belt and grind out "ridges and mill marks." Id. These positions represent Rice's employment history for the fifteen years prior to the onset of her alleged disability.
 
 
 11
 At the hearing, Rice stated that she stopped working because she was experiencing severe pain. (Tr. 41) She testified that she is constantly in pain but that sometimes it is tolerable. (Tr. 42) Rice described the pain as being on both sides of her neck and extending down the top part of the spine and across her shoulders. Id. In part, Rice's pain stems from chronic pain syndrome in her back, neck, and shoulders, as well as fibromyalgia. In addition, Rice has some disc bulging and osteophyte formations at C5-6 and C6-7. (Tr. 135-36, 139, 14, 145-46, 156) One medical report in the record stated that Rice's pain probably stems from moderately severe degenerative arthritis and disc disease. Rice also reports having bilateral suboccipital headaches for the past twenty-five years and a history of depression.
 
 
 12
 Rice has taken, and in some instances is still taking, various medications. Currently, Rice is taking 1200 milligrams of Ibuprofen[4], Cytotec[5] and Flexeril.[6] (Tr. 43) She used to take Voltaren but she can no longer afford it.[7] In addition, Rice testified that she takes Prozac to prevent her from being suicidal.[8] Several of her physicians opined that they believed her pain was not curable through surgery.
 
 
 13
 The dispute upon review centers on Rice's contentions that: (1) the ALJ erred by improperly evaluating her subjective complaints of pain, and (2) the ALJ failed to correctly apply Social Sec. Ruling 83-12. The Secretary argues that the ALJ's decision is supported by substantial evidence and should be affirmed.
 
 IV. STANDARD OF REVIEW
 
 14
 An applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months ..[.]" 42 U.S.C. Sec. 416(i); 42 U.S.C. Sec. 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Sec. 423(d)(3). It is not enough for the plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir.1962), cert. denied, 372 U.S. 945 (1963). If an impairment is not found to be severe, benefits are denied. 20 C.F.R. Secs. 404.1520(c), 416.9209(c); Bowen v. Yuckert, 482 U.S. 137 (1987).
 
 
 15
 Plaintiff has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. Meredith v. Bowen, 833 F.2d 659 (7th Cir.1987); Owens v. Heckler, 770 F.2d 1276, 1280 (5th Cir.1985); Garner v. Heckler, 745 F.2d 383, 390 (6th Cir.1984); Jeralds v. Richardson, 445 F.2d 36, 39 (7th Cir.1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." Jeralds, 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." Couch v. Schweiker, 555 F.Supp. 651, 654 (N.D.Ind.1982).
 
 
 16
 The Secretary has adopted a five step sequential evaluation process to determine if a person is disabled. According to this process, the following questions are addressed in order:
 
 
 17
 (1) Is the claimant currently unemployed?
 
 
 18
 (2) Is the claimant's impairment severe?
 
 
 19
 (3) Does the impairment equal or exceed one of a list of specific impairments?
 
 
 20
 (4) Is the claimant unable to perform his or her former occupation?
 
 
 21
 (5) Is the claimant unable to perform any other work in the national economy?
 
 
 22
 An affirmative answer leads either to the next step, or on steps (3) and (5) to a finding that the claimant is disabled. A negative answer, at any point other than step (3), stops the inquiry and leads to a determination that the claimant is not disabled.
 
 
 23
 20 C.F.R. Secs. 404.1520(b)-(f). See also, Stuckey v. Sullivan, 881 F.2d 506 (7th Cir.1989); Guzman v. Bowen, 801 F.2d 273, 274 (7th Cir.1986); Bunch v. Heckler, 778 F.2d 396 (7th Cir.1985); Zalewski v. Heckler, 760 F.2d 160, 162 (7th Cir.1985).
 
 
 24
 This court's "review of the Secretary's findings is limited to a determination of whether those findings are supported by substantial evidence based on the record as a whole." Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir.1988); Burnett v. Bowen, 830 F.2d 731, 734 (7th Cir.1987). "Substantial evidence" has been described as "more than a mere scintilla." It means, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion ..[.]" Anderson v. Bowen, 868 F.2d 921, 923 (7th Cir.1989), quoting, Richardson v. Perales, 402 U.S. 389 (1971). See also, Roy, 843 F.2d at 101; Bauzo v. Bowen, 803 F.2d 917, 923 (7th Cir.1986).
 
 V. DISCUSSION
 
 25
 The question on review is not whether Rice is disabled, but only whether the Secretary's decision that Rice is not disabled is supported by substantial evidence. It is fundamental that this court may not reweigh the evidence. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir.1987); Delgado v. Bowen, 782 F.2d 79, 79-83 (7th Cir.1986). While "this court will not decide facts anew, reweigh evidence, or substitute its judgment for that of the ALJ, the court must not simply rubber stamp the decision in the absence of a critical review of the evidence." Arbogast v. Bowen, 860 F.2d 1400, 1403 (7th Cir.1988); Veal v. Bowen, 833 F.2d 693, 696 (7th Cir.1987); Roy v. Secretary of Health and Human Servs., 512 F.Supp. 1245 (7th Cir.1981). However, if the record as a whole contains substantial evidence to support the Secretary's (or the ALJ's) factual determination, the decision of the Secretary must be affirmed unless there has been an error of law. Waite v. Bowen, 819 F.2d 1356, 1360 (7th Cir.1987); Orlando v. Heckler, 776 F.2d 209, 213 (7th Cir.1985).
 
 
 26
 After careful consideration of the entire record, the ALJ made the following findings:
 
 
 27
 1. The claimant met the disability insured status requirements of the Act on April 4, 1990, and the date the claimant stated she became unable to work, and continues to meet them through the date of this decision.
 
 
 28
 2. The claimant has not engaged in substantial gainful activity since April 4, 1990.
 
 
 29
 3. The medical evidence establishes that the claimant has severe chronic pain syndrome in her back, neck and shoulder areas, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.
 
 
 30
 4. The claimant's subjective complaints are credible as to the fact that she experiences some pain; however, they are out of proportion to the medical evidence in the record, and her alleged functional limitations are not fully credible.
 
 
 31
 5. The claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for prolonged standing or sitting without alternating such activities, lifting 10 pounds more than occasionally, and the nonexertional limitations of the inability to reach over shoulder level, working in cold or wet weather (20 CFR 404.1545).
 
 
 32
 6. The claimant is unable to perform her past relevant work as a machine operator and inspector.
 
 
 33
 7. The claimant has the residual functional capacity for light work except for sitting or standing without alternating such activities, lifting 10 pounds more than occasionally, reaching above shoulder level, working in cold or wet weather.
 
 
 34
 8. The claimant is 51 years old, which is defined as an individual closely approaching advanced age (20 CFR 404.1563).
 
 
 35
 9. The claimant has one year of college education (20 CFR 404.1564).
 
 
 36
 10. The record does not show that the claimant has any acquired work skills which are transferable to the skilled or semiskilled work functions of other work (20 CFR 404.1568).
 
 
 37
 11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 and Rule 2202.14, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."
 
 
 38
 12. Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decisionmaking, there are a significant number of unskilled jobs in the national economy which she could perform. Examples of such jobs are: customer service/retail, of which there are 200 in the region; and, security guard, of which there are 300 in the region.
 
 
 39
 13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(f)).
 
 
 40
 (Tr. 19-21)
 
 
 41
 Based on these findings, the ALJ determined that Rice was not entitled to DI benefits. After the Appeals Council declined review of the Secretary's decision, this appeal followed.
 
 
 42
 Rice's argument on appeal is two-fold. First, Rice contends that the ALJ erred by improperly evaluating her subjective complaints of pain. Second, Rice argues that the ALJ failed to correctly apply Social Sec. Ruling 83-12. The court will address both of these assertions seriatim.
 
 
 43
 A. The ALJ Properly Considered Rice's Subjective Complaints of Pain
 
 
 44
 Rice's first argument is that the ALJ erred by failing to properly evaluate her subjective complaints of pain. Rice contends that the ALJ "rejected [her] testimony in regard to the intensity and persistence of her pain and the effect upon her ability to work solely because these complaints are 'out of proportion to the medical evidence'." See Rice's Brief at pg. 13. It is Rice's position that the ALJ erred because the Code of Federal Regulations states that "we will not reject your statements about the intensity and persistence of your pain ... solely because the available objective medical evidence does not substantitate your statements." 20 C.F.R. Sec. 404.1529(c)(2).
 
 
 45
 Title 20, Section 404.1529 of the Code of Federal Regulations sets forth how to evaluate a disability claimant's complaints of pain. A claimant's statements about her pain will not alone establish disability; there must be objective medical evidence showing impairments that could "reasonably be expected to produce the pain." 20 C.F.R. Sec. 404.1529(a) & (b). In the instant case, the ALJ opined that Rice "has a physical condition which is capable of producing some pain," and noted that it was "the apparent consensus of her doctors' that her subjective complaints reflect chronic pain syndrome." (Tr. 16-17) Having determined that the objective medical evidence shows that Rice suffers from a physical condition which is capable of producing pain, the ALJ was then to determine the intensity and persistence of her pain, and the extent to which her pain limits her capacity for work. 20 C.F.R. 404.1529(c).
 
 
 46
 In determining the intensity and persistence of Rice's pain, the ALJ was to consider "all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements from you, your treating or examining physician or psychologist, or other persons about how your symptoms affect you." 20 C.F.R. 404.1529(c)(1). Moreover, the Code goes on to state:
 
 
 47
 "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."
 
 
 48
 20 C.F.R. 404.1529(c)(2). Rice contends that the ALJ failed to properly evaluate her pain based on the ALJ's statement that "the claimant's subjective complaints are out of proportion to the medical evidence and that her alleged functional limitations are less than fully credible." (Tr. 17) (emphasis added)
 
 
 49
 Notably, the ALJ did not state that she was "rejecting," or not considering, Rice's complaints of pain. Indeed, there is substantial evidence in the record showing that the ALJ considered all the evidence in arriving at her finding of no disability. For example, the ALJ expressly stated that she considered "such factors as the nature, duration, and frequency of any pain alleged, the effectiveness of any pain medications taken and the side effects, and their functional restrictions on the claimant's daily activities caused by the pain."[9] (Tr. 16) As to that last factor, the evidence in the record shows that Rice drives, cooks, washes dishes, cleans bathrooms, can use a light-weight vacuum cleaner, attends church three times a week, sings in the church choir twice a week, and takes walks. (Tr. 46, 98, 152, 159-60) Finally, the ALJ considered factors that precipitated pain (such as reaching above shoulder level and working in cold or wet weather) and then limited Rice to work that avoided those factors.
 
 
 50
 The ALJ followed established procedure by considering all the evidence prior to determining the extent to which Rice's alleged pain affected her capacity to perform work activities. See 20 404.1529(c)(4).[10] Therefore, the court finds that there is no evidence to support Rice's argument that the ALJ rejected, or failed to consider, her subjective complaints of pain.
 
 
 51
 B. The ALJ's Decision Was In Accord With The Proper Application Of Social Sec. Ruling 83-12
 
 
 52
 The party petitioning for disability benefits bears the burden of proving her entitlement to benefits under the Social Security Act. Adams v. Heckler, 580 F.Supp. 315 (N.D.Ind.1984); Johnson v. Weinberger, 525 F.2d 403 (7th Cir.1975). In the instant case, the ALJ acknowledged that Rice is currently unemployed and suffers from severe impairments. Furthermore, the ALJ found that Rice's impairments, while not meeting or equal to a listed impairment, prevent her from performing her former occupation. Thus the burden shifted to the Secretary to show that based on Rice's RFC there were still a significant number of jobs existing in the national economy that she could perform.
 
 
 53
 Rice argues that the ALJ's decision should be reversed because the ALJ did not consider to what extent the occupational base was eroded as a result of Rice's limited RFC. Rice directs the court's attention to Social Sec. Ruling 83-12, which in part states:
 
 
 54
 Where an individual's exertional RFC does not coincide with the definition of any of the ranges of work as defined in Sections 404.1567 and 416.967 of the regulations, the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability. The adjudicator will consider the extent of any erosion of the occupational base and assess its significance.
 
 
 55
 (emphasis added). Rice argues that the ALJ failed to consider the extent of the erosion of the occupational base even though Rice only has a RFC for light work, which is limited by various exertional and nonexertional restrictions.[11] See supra, ALJ's Findings, pg. 9, at p 7. Rice disputes the value of the ALJ's use of the VE because "she did not even ask the VE about the erosion." See Rice's Brief, at pg. 18. This argument fails.
 
 
 56
 The ALJ used a vocational expert to determine whether there was still work existing in significant numbers that Rice could perform, despite the fact that Rice's ability to perform the full range of light work was reduced by exertional and nonexertional limitations. Social Security Ruling 83-12 states that in cases where the erosion of the occupational base is unclear the adjudicator should consult vocational resources or vocational experts. S.S.R. 83-12, at pg. 188.
 
 
 57
 In the instant case, the ALJ took into consideration all of Rice's limitations and asked the VE the following question:
 
 
 58
 "Well--okay. Let's suppose an individual of the claimant's age, education and past work experience who could, who could, could be on their feet six hours out of a day but could not be standing more than a half an hour at a time, could lift ten pounds only occasionally and not reach above the shoulder, are there jobs that would be classified as light that such an individual could do?"
 
 
 59
 (Tr. 60) Taking into consideration those limitations, the VE stated that Rice could perform approximately 300 security guard jobs and approximately 200 retail customer service jobs.[12] (Tr. 61) In answering the ALJ's fact specific question, the court believes that it can be safely presumed that the VE only considered those jobs that remained available given Rice's limitations. After all, consultations with vocational experts generally occur in cases that involve claimants whose non-exertional limitations restrict the full range of work. See eg., DeFrancesco v. Bowen, 867 F.2d 1040, 1045 (7th Cir.1989) (Case remanded for vocational expert testimony as to whether the claimant can actually do work to warrant a conclusion of no disability.); Warmoth v. Bowen, 798 F.2d 1109, 1112 (7th Cir.1986) ("[W]e only require that there be reliable evidence of some kind that would persuade a reasonable person that the limitations in question do not significantly diminish the employment opportunities otherwise available."); Turner v. Sullivan, No. 91-6129, 1991 U.S.App. LEXIS 30064, at * 4-5 (10th Cir. Dec. 10, 1991) (No specific finding regarding claimant's occupational base is required where ALJ consulted vocational evidence showing claimant could perform a significant number of jobs.).
 
 
 60
 Rice next argues that the Secretary failed to identify "substantial numbers" of occupations she could perform. However, the issue is not whether Rice can perform a substantial number of occupations; rather, the issue is whether Rice can perform work which exists in the national economy in significant numbers. See 42 U.S.C. Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1566(b). Further, "work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country." 20 C.F.R. Sec. 404.1565(a). This is true regardless whether "work exists in the immediate area in which you live, a specific job vacancy exists for you, or you would be hired if you applied for work." Id. See also, 20 C.F.R. Sec. 404.1565(c); but see, 20 C.F.R. Sec. 404.1565(b) ("[I]solated jobs that exist in relatively few locations outside of the region where you live are not considered 'work in the national economy.' "
 
 
 61
 As previously noted by the court supra, the VE identified over 500 jobs in the regional economy that Rice could still perform despite her limited RFC. Clearly, without even going on to discuss the potential number of such jobs available in the national economy, the Secretary showed that Rice could still perform a significant number of jobs. Therefore, the court finds that the ALJ's decision on this issue is supported by substantial evidence and should be affirmed.
 
 
 62
 C. The ALJ's Decision Is Supported By Substantial Evidence
 
 
 63
 Having disposed of Rice's arguments on appeal, the court will now briefly offer further reasons why the ALJ's decision is supported by substantial evidence.
 
 
 64
 Rice was referred by her family physician to Dr. Harry Staley, a rheumatologist.[13] Dr. Staley examined Rice on several occasions and completed a medical assessment form. (Tr. 178) Dr. Staley noted that he believed that Rice could lift, carry, push and pull ten pounds occasionally (Tr. 178-79), occasionally bend/stoop (Tr. 181), and sit eight hours, stand four hours, and walk four hours in a normal eight hour workday. (Tr. 178) Dr. Staley's opinion represents substantial evidence supporting the ALJ's decision.
 
 
 65
 The record also contains substantial evidence that Rice's alleged depression was controlled with Prozac. (Tr. 155, 163) In fact, Dr. Kramer noted in his psychological evaluation that Rice did not have any functional impairment of a psychological nature. (Tr. 163).
 
 
 66
 Finally, the court notes that Rice's family physician, Dr. Samuel Toney, stated in a February 7, 1991, letter to the Social Security Administration that Rice "is unemployable by any serious employer and that this condition will continue in the future without remedy as it has in the past." (Tr. 153) (emphasis added) While Dr. Toney's medical observations must be considered by the ALJ, whether Rice is employable is an issue that is ultimately reserved to the Secretary. See 20 C.F.R. Sec. 404.1527(e)(1) & (2).
 
 
 67
 For all of the reasons set forth herein, the court finds that there is substantial evidence to support the ALJ's decision to deny Rice DI benefits.
 
 CONCLUSION
 
 68
 As stated previously, this court is not to reweigh the evidence but merely to determine whether the ALJ's decision is supported by substantial evidence. After a thorough of the record, the Magistrate Judge is convinced that the ALJ's decision is supported by substantial evidence. Therefore, the Secretary's decision to deny Rice disability insurance benefits is hereby AFFIRMED.
 
 
 69
 ENTER: this 16th day of April, 1993.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. Sec. 636(c), all parties consenting
 
 
 [2]
 On January 22, 1993, Donna E. Shalala succeeded the original defendant, Dr. Louis W. Sullivan, as the Secretary of Health and Human Services. The substitution of Shalala for Sullivan is proper pursuant to Fed.R.Civ.P. 25(d)(1)
 
 
 [3]
 Generally, an individual's residual functional capacity is "what you can still do despite your limitations ... This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment. Then, using the guidelines in Secs. 404.1560 through 404.1569, your vocational background is considered along with your residual functional capacity in arriving at a disability decision." 20 C.F.R. Sec. 404.1545
 
 
 [4]
 Ibuprofen is a nonsteroidal anti-inflammatory agent effective in controlling pain. Physician's Desk Reference 717 (47th ed. 1993)
 
 
 [5]
 Cytotec is indicated for the prevention of nonsteroidal anti-inflammatory drug-induced gastric ulcers. Physician's Desk Reference 2251 (47th ed. 1993)
 
 
 [6]
 Flexeril is indicated as "an adjunct to rest and physical therapy for relief of muscle spasms associated with acute, painful musculoskeletal conditions. Physician's Desk Reference 1523 (47th ed. 1993)
 
 
 [7]
 Voltaren is nonsteroidal, anti-inflammatory indicated for acute and chronic treatment of the signs and symptoms of rheumatoid arthritis, osteoarthritis, and ankylosing spondylitis. Physician's Desk Reference 1074-75 (47th ed. 1993)
 
 
 [8]
 Prozac is an orally administered antidepressant. Physician's Desk Reference 943 (47th ed. 1993)
 
 
 [9]
 Some of the factors that the ALJ may consider in evaluating the intensity and persistence of pain include: (1) the claimant's daily activities, (2) the location, duration, and frequency of pain, (3) precipitating and aggravating factors, (4) types of medication and their side effects, (5) treatment received for relief of pain, and (6) any measures, other than medication, attempted to relieve pain. See 20 C.F.R. 404.1529(c)(3)
 
 
 [10]
 In part, 20 C.F.R. 404.1529(c)(4) states:
 "In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all the available evidence ... your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled." (emphasis added).
 
 
 [11]
 "Light Work" is a term of art, defined by Reg. Sec. 1567(b), which states:
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
 
 
 [12]
 The VE also testified that Rice could perform approximately 50 to 60 parking lot attendant jobs. (Tr. 61) A fair reading of the record suggests that the ALJ did not consider that occupation because the VE stated that persons so employed might be affected by cold weather
 
 
 [13]
 A rheumatologist is a physician skilled in the diagnosis and treatment of rheumatic conditions. Stedman's Medical Conditions 1232 (5th ed. 1984)