**Dorothy SAMPLE,\* Plaintiff–Appellant,**

v.

**Donna E. SHALALA,\*\* Secretary of Health and Human Services, Defendant–Appellee.**

No. 92–2770.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1993.

Decided July 21, 1993.

---

\* The panel has learned that Dorothy Sample died since this appeal was filed. Although her husband, Arthur Sample, is substituted as plaintiff-appellant, *see* Order of June 28, 1993, we will refer to Dorothy Sample as plaintiff throughout this opinion because she was the plaintiff at the time the briefs were prepared.

\*\* Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1).

Janet F. Gerske (argued), Chicago, IL, for plaintiff-appellant.

Fred Foreman, U.S. Atty., Crim. Div., Grace M. Kim (argued), Dept. of Health and Human Services, Region V, Office of the Gen. Counsel, Michele M. Fox, Asst. U.S. Atty., Civ. Div., Appellate Section, Chicago, IL, for defendant-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Dorothy Sample suffered from a variety of impairments, most notably recurring dizziness that she claimed severely restricted her ability to hold a job or to function day to day. In October 1988, she applied to the Secretary of Health and Human Services ("the Secretary") for disability insurance benefits pursuant to Title I of the Social Security Act, 42 U.S.C. §§ 301 *et seq.* An administrative law judge ("ALJ") concluded that she could perform her past relevant work as a gas station cashier, and the Secretary accordingly denied her application. In an action Sample commenced challenging the Secretary's denial, the district court entered summary judgment in favor of the Secretary. For the reasons that follow, we vacate the decision below and remand for reconsideration by the Secretary.

I.

Dorothy Sample, who was 58 at the time of the ALJ's decision, had an extensive history of medical problems dating at least back to the 1970s. The ALJ's decision comprehensively reviews the evidence pertaining to Sample's medical history. *See* A.R. at 9–18.[1] Our summary of that history is less detailed here, and we will note some facts only as they become relevant to our discussion.

In her October 1988 application for disability insurance benefits, Sample stated that she was unable to engage in substantial gainful activity because of Raynaud's disease,[2] heart trouble, strokes, and high blood pressure. According to Sample these impairments began on March 27, 1982. Sample had been

---

1. "A.R." refers to the page number in the certified administrative record prepared by the Secretary and filed with the district court pursuant to 42 U.S.C. § 405(g). The ALJ's decision of February 28, 1990, is found at pages 9–18 of that record, and at pages A–2 through A–11 of the appellant's brief.

2. Raynaud's disease is characterized by deficiency of blood in the fingers, toes, and sometimes ears or nose, indicated by "severe pallor" and accompanied by numbness and pain. The effects are normally brought on by cold or emotional stimuli and relieved by heat. Appellee's Br. at 2 (citing W.B. SAUNDERS Co., *Dorland's Illustrated Medical Dictionary* 491, 1276 (27th ed. 1988)).

treated for various medical problems over the course of several years. Between 1975 and 1981, for example, she was treated for complaints of chronic dizzy spells and other problems. A.R. at 12–13. She began receiving treatment at the University of Illinois ("UIC") Hospital in late 1981 for dizziness and hypertension. One UIC physician who treated her in 1987 and 1988 reported that Sample suffered from vertigo and that the symptoms appeared to be incapacitating, but that the etiology of the vertigo remained unknown despite extensive evaluation of her over several years. Reports through 1989 by UIC doctors—including a neurological report by Dr. Jesse Taber—reiterate the diagnosis of vertigo, hypertension, Raynaud's disease, degenerative joint disease, and a history of cerebral infarctions.

The ALJ's decision states that Sample's main complaints were that she experienced frequent dizzy spells and passed out "all of the time." A.R. at 12. Specifically, Sample stated that she got dizzy four or five times every day for 15 minutes to one hour. A.R. at 16. Sample said that she experienced cold spells and chest pains, that she tired easily, and that these impairments kept her largely confined to the house.

Sample, a high school graduate, worked as a cashier for an A & P grocery store from 1965 until March 27, 1982. Sample's duties at the grocery store can be characterized as exertionally light work under the complex statutory and regulatory terminology. Although Sample claims to have left the cashier job because of her impairments, she attempted to return to work in early 1984 as a cashier at an Amoco service station. The length of time Sample worked at Amoco is a matter of dispute, but wage reports indicate she was employed there for about seventeen weeks.

According to a vocational report prepared by the plaintiff, the Amoco job involved all standing or walking and lifting up to 50 pounds when helping to unload deliveries. At the hearing before the ALJ, Sample described her work at Amoco as follows:

Well, I didn't do anything but, but we— there was a little store in there we had coffee, and, and you know, stuff like that— ... and I would pump—not pump the gas, but put the gas, you know,—give the people the gas, some of the gas.

A.R. at 45. Sample also stated in a job description form that her duties included cleaning up the station "inside [and] out." When the ALJ asked her what cleaning she did outside the station, she responded: "I didn't do anything but wipe—you had to wipe the pumps off." *Id.*

In a decision issued February 28, 1990, the ALJ found that Sample had not engaged in substantial gainful activity since February 1984 and that she was severely impaired by a history of hypertension, degenerative joint disease, Raynaud's disease, vertigo, diabetes, and mild bronchitis. In reaching his decision, however, the ALJ found that Sample was not credible. Her complaints of vertigo, for example, are "unsubstantiated," she "seems to exaggerate her complaints of the frequency of her attacks of dizziness" and her testimony about her limitations is not credible "in view of the fact that [she] is visited by friends and goes to church three or more times per week." A.R. at 16.

The ALJ determined that Sample's impairments did not meet or equal any impairment in the Social Security Administration's Listings of Impairments ("Listings"). Moreover, the ALJ found that Sample had the residual functional capacity for sedentary work on the date her prior insured status expired, December 31, 1988. Finally, the ALJ concluded that Sample's past relevant work as a gas station cashier did not exceed her residual functional capacity and that she was capable of performing her past relevant work. Therefore, she was not disabled and could not qualify for disability benefits.

After an Appeals Council denied Sample's request for review of the ALJ's decision, Sample filed a civil action for judicial review of the decision in United States District Court. The district court denied Sample's request for remand on the basis of new evidence she submitted.[3] The court also found

**3.** The evidence Sample submitted was a letter dated November 6, 1991, from Dr. Taber, the

neurologist who treated Sample at the UIC hospital. The letter stated Dr. Taber's opinion,

that substantial evidence supported the ALJ's decision that Sample was not disabled because she could perform her past relevant work as a gas station cashier. *Sample v. Sullivan*, No. 91–2191 1992 WL 130294 (N.D.Ill. June 5, 1991). Sample appealed.

## II.

Section 205(g) of the Act, 42 U.S.C. § 405(g), authorizes judicial review of the ALJ's decision. We must affirm the Secretary's finding of not disabled if substantial evidence supports this finding. *Id.* (Secretary's findings conclusive if supported by substantial evidence); *Walker v. Bowen*, 834 F.2d 635, 639 (7th Cir.1987). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–217, 83 L.Ed. 126 (1938)).

To qualify for disability benefits, a claimant must be "disabled." The Act defines "disabled" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Physical or mental impairment" is an impairment resulting "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Social Security regulations set forth a five-step inquiry to determine whether a claimant is disabled. The Secretary must determine (1) whether the claimant is presently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Secretary's listed impairments; (4) whether the claimant can perform her past relevant work; and (5) whether she is capable of performing any work within the economy. *Schroeter v. Sullivan*, 977 F.2d 391, 393

(7th Cir.1992). A claimant must always satisfy the first two factors, but a finding of disability results if she has a listed impairment or can do neither her previous work nor any other work. *Id.*

As stated above, the ALJ determined that Sample satisfied the first two factors—that is, she had not been gainfully employed since February 1984 and was severely impaired by a history of various ailments. He nevertheless concluded that her impairments did not meet or equal a listed impairment and that she had the functional capacity for sedentary work. These findings required a conclusion that Sample was not disabled.

The plaintiff challenges the decision below on three main grounds. First, she contends that her impairments equal the Secretary's Listings—specifically, section 2.07's listing pertaining to vertigo—and that such a finding of equivalence is conclusive evidence of disability. Second, Sample argues that the district court should have remanded the case to the Secretary for consideration of additional evidence. Finally, Sample says that the ALJ erred in finding she could return to her past relevant work.

█ The plaintiff's first contention regarding the equivalency between her impairments and those in the Listings warrants careful consideration. Section 2.07 of the Listings provides that a claimant will be deemed disabled if she meets or equals the following criteria:

> Disturbance of labyrinthine-vestibular function (including Meniere's disease), characterized by (1) a history of frequent attacks of balance disturbance (vertigo), (2) tinnitus (ringing in the ears), and (3) progressive loss of hearing, with both (A) disturbed function of vestibular labyrinth (inner ear components) demonstrated by caloric or other vestibular tests, and (B) hearing loss established by an audiometry.

The plaintiff admits that she fails to meet section 2.07's elements of tinnitus and hearing loss, but she maintains that her impair-

---

based upon his treatment of Sample from 1987 to 1989 and his review of her medical records,

that Sample's vertigo equalled the impairment described in section 2.07 of the Listings.

ments equal the elements nonetheless.[4] The medical evidence does show a clear similarity between Sample's problems and those described in section 2.07, except that her vertigo was not accompanied by hearing loss or ringing in the ears. No easy formula dictates the extent to which an impairment can deviate from the Listings' exact terms and still be deemed equivalent. Sample's history of incapacitating dizziness supports a finding of equivalence to section 2.07's first element, a history of frequent attacks of vertigo. Her failure to demonstrate the prominent elements of hearing loss and tinnitus, however, provides a justifiable basis and substantial evidence for the ALJ's conclusion that the two were not equal.

■ In the second of Sample's arguments that we address, Sample presents two challenges to the ALJ's finding that she could return to her past relevant work. First, she contends that her work at Amoco was not past relevant work at all. That is, Sample asserts that the Amoco job is better characterized as an unsuccessful work attempt because she so frequently needed to sit down on the job or have someone else cover for her and because she eventually quit the job because of her impairments. The regulations provide that work can be considered an unsuccessful work attempt when a claimant is unable to perform work for more than a short time, and is forced to quit the work due to an impairment. 20 C.F.R. §§ 404.-1574(a)(1), 416.974(a)(1) (1992). The Secretary has generally presumed that a work attempt for less than three months can be an unsuccessful work attempt, *see* Social Security Ruling 84-25 at 93,[5] but that such at-

tempts may continue for up to six months under special circumstances, for example, if the claimant obtained help from other employees. Sample's testimony that the manager would cover for her at times may demonstrate such special circumstances. Because she apparently worked the job for more than four months, however, the ALJ's characterization of the job as relevant past work is supported by substantial evidence.

■ Sample's second challenge has more appeal. Sample argues that the ALJ erred in determining that her work at Amoco was sedentary instead of light work.[6] Because the ALJ also found that Sample was limited to sedentary work, his conclusion about the character of the Amoco work was controlling. Under the Medical–Vocational Guidelines ("the Grid"), if a person of Sample's age, education, and previous work experience cannot return to her past relevant work, she should be found disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, rules 201.04 and 201.06. The ALJ categorized Sample's work at Amoco as sedentary based on her testimony that she would sit "all the time" and expressly in spite of her testimony that her cleaning responsibilities involved wiping the gas pumps. A.R. at 12, 18.

When considered in its proper context, the plaintiff's testimony about sitting "all the time" that the ALJ relied on cannot form a justifiable basis for the ALJ's decision. Instead of supporting the ALJ's characterization of the job as sedentary, Sample's comments demonstrate that Sample was sitting due to her illness, not because the job was sedentary. Sample clearly stated that she

---

**4.** Sample argues that but for different causes, the vertigo she suffers from is the same as that described in the Listings. Because her vertigo is the result of a rare central vascular disease instead of lesions in the inner ear or 8th nerve, it does not cause hearing loss or tinnitus. But the absence of tinnitus and hearing loss, Sample contends, is not sufficient to render Sample's impairment unequal to the Listings.

**5.** Social Security Rulings are "final opinions and orders and statements of policy and interpretations that have been adopted by the [Social Security] Administration and that are not published in the Federal Register...." *Warmoth v. Bowen,* 798 F.2d 1109, 1111 n. 5 (7th Cir.1986) (citing

*20 C.F.R. § 442.408 (1985)). Once these rulings are published, they are binding upon ALJs as reliable precedent in determining factually similar cases. Id.* (citing *Johnson v. Heckler,* 769 F.2d 1202, 1205 (7th Cir.1985)).

**6.** Light work requires lifting up to 20 pounds at a time with frequent lifting or carrying of up to ten pounds and standing or walking for about six hours in an eight-hour work day. S.S.R. 83–10 at 179; 20 C.F.R. § 404.1567. Jobs are sedentary if they require walking and standing no more than one-third of an eight-hour day—generally no more than about two hours. *Id.* Sedentary work also involves lifting no more than ten pounds at a time. *Id.*

"couldn't stay there because I was, I was sick, and I would sit all the time." A.R. at 45. She also said that "when I got sick I could sit down, because [the manager] would come in and cover for me." *Id.* Both of these statements clearly indicate that Sample's sitting was a deviation from the normal job requirements. A fair reading of these statements in context cannot support the conclusion that the job involved sitting all day or was otherwise sedentary.

In addition to the plaintiff's testimony, the other objective evidence in the record also stands in stark contrast to the ALJ's characterization of the Amoco position. For example, an April 1985 vocational report the plaintiff submitted states that the Amoco job required standing or walking for eight hours per day, lifting 50 pounds and *no* sitting. A.R. at 115. Sample's duties included operating the computer cash register, selling groceries and gasoline, and totalling up the purchases at the end of the day. A form Sample prepared for her hearing also states that the job required Sample to clean the station inside and out. A.R. at 325.

Moreover, the listings in the Department of Labor's Dictionary of Occupational Titles characterize a cashier-checker job as light work, not sedentary. *Dictionary of Occupational Titles* 183 (Rev. 4th ed. 1991). The publication in effect at the time of the ALJ's decision defines the cashier-checker job as the following:

> Operates cash register to itemize and total customer's purchases in self-service grocery or department store: Reviews price sheets to note price changes and sale items. Records prices and departments, subtotals taxable items, and totals purchases on cash register. Collects money from customer and makes change. Stocks shelves and marks prices on containers. May weigh items, bag merchandise, issue trading stamps, and redeem food stamps and promotional coupons. May be designated according to items checked as grocery checker.

*Dictionary of Occupational Titles* 167 (4th ed. 1977). A related publication, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (1981), also categorizes the cashier-checker job as light work. *Id.* at 319.

As this court has noted, the Secretary, in making a finding as to job requirements, "is to consider the testimony of claimant as well as supplemental sources of information, such as the United States Department of Labor's *Dictionary of Occupational Titles (DOT)*." *Schroeter,* 977 F.2d at 394; *see also* S.S.R. 82–62 at 160–161, *reprinted in* 1982–83 Unempl.Ins.Rep. CCH ¶ 14,362 at 2499–67, 2499–70. The ALJ may also consider the actual functional demands of the job as it was performed by the claimant, though any discrepancy between the demands of the claimant's actual past work and the demands of that work as generally found in the economy is not determinative. *Anderson v. Bowen,* 868 F.2d 921, 925 n. 11 (7th Cir.1989); *Orlando v. Heckler,* 776 F.2d 209, 215 (7th Cir.1985). We are also mindful that an ALJ may make credibility determinations that are entitled to considerable deference. *Steward v. Bowen,* 858 F.2d 1295, 1302 (7th Cir.1988). But here, the plaintiff's testimony and other evidence are consistent. Resolution of this issue, therefore, does not require a credibility determination based upon conflicting evidence about the nature of the Amoco job. Even if the ALJ found Sample to be a less than credible witness, no substantial evidence that we are aware of can support the contrary view that the Amoco job involved sedentary work; neither the mischaracterization of Sample's testimony regarding the nature of her job nor the ALJ's disbelief of Sample qualifies as substantial evidence on this matter. As we stated in *Schroeter,* "[i]f [the claimant's] testimony stood uncontradicted, the ALJ was bound to consider it." 977 F.2d at 395. We must affirm the ALJ's decision if his findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support Sample's claim. *Walker v. Bowen,* 834 F.2d 635, 639–40, 642 (7th Cir.1987); *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985). In the present case, however, no substantial evidence supports the ALJ's conclusion regarding the sedentary nature of the plaintiff's job at Amoco.

■ Though the argument above serves as the grounds for our decision to remand, we will nonetheless turn briefly to the plaintiff's final argument—that additional important evidence should be considered on remand. According to the plaintiff, the district court should have remanded the case so that the Secretary could evaluate a letter Dr. Taber wrote in November 1991 stating his view that Sample's impairments equalled section 2.07 of the Listings.[7] Under 42 U.S.C. § 405(g), the district court may, on a motion of the Secretary made for good cause, remand the case to the Secretary and order the Secretary to consider additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To prevail on this issue, then, the plaintiff must meet the requirements of newness, materiality, and good cause.

We review de novo the questions of law, including whether additional evidence is new and material. *See Sears v. Bowen,* 840 F.2d 394, 400 (7th Cir.1988). Contrary to the Secretary's position, the evidence may well be material; presumably a treating physician's view that a patient's impairments equalled the Listings might influence the Secretary's decision. *See id.* (materiality requires "reasonable probability" Secretary would have reached a different conclusion). Sample's argument that the evidence is also new is unpersuasive, however. "New" evidence is evidence "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990). Dr. Taber's medical conclusion about the equivalency of Sample's impairments was based upon Sample's treatment at the UIC neurology clinic between 1988 and 1989, the evidence of which was already part of the record when this case was before the ALJ. Although Dr. Taber's actual letter was written after the ALJ's decision, it was based on information that was part of

the administrative record and that was available prior to the ALJ's decision, namely, his treatment of Sample in 1988 and 1989, a 1987 MRI, and 1981 hospital notes. Such evidence is not fairly characterized as new. Sample also has not met the requirement of good cause in light of her inability to demonstrate sufficient reason for failing to incorporate the evidence into the record during the administrative proceeding. In sum, the district court did not err in denying Sample's request to remand her case to the Secretary to receive new evidence.

### III.

We are not satisfied that the ALJ relied on substantial evidence in concluding that the plaintiff's Amoco job was sedentary work that she could return to. For the foregoing reasons, we VACATE the district court's grant of summary judgment and REMAND to the Secretary for further proceedings consistent with this opinion.

---

7. Specifically, Dr. Taber stated that he believed Sample's vertigo to be a result of cerebrovascular disease affecting the brainstem, as evidenced by a 1987 MRI. Based on the 1981 diagnosis of right vestibular disorder, Dr. Taber said, her condition was equal in severity to section 2.07 because vertigo associated with central vascular disease would not cause hearing loss or tinnitus.