**Edward RICE, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration Defendant.**

No. 97 C 4127.

United States District Court, N.D. Illinois, Eastern Division.

May 20, 1998.

---

Marcie E. Goldbloom, Frederick J. Daley, Frederick J. Daley, Ltd., Chicago, IL, for Plaintiff.

Jack Donatelli, U.S. Attys. Office, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Plaintiff Edward Rice seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") pursuant to 42 U.S.C. § 405(g). Plaintiff moves for summary judgment or for a remand to the Commissioner for further administrative proceedings. The Commissioner has filed a brief in support of the agency's decision, requesting affirmance of that decision. For the reasons set forth below, this court denies Plaintiff's motion for summary judgment, but grants Plaintiff's request for a remand.

1. An individual can collect SSI under Title XVI only as of the date of application, regardless of how long he may have suffered from a particular infirmity. *See* 20 C.F.R. § 416.335. An individual can collect DIB under Title II that covers up to twelve months of disability prior to the filing of a DIB application, provided that he had insured

## PROCEDURAL HISTORY

Plaintiff protectively filed for Supplemental Security Income ("SSI") on April 11, 1994 and applied for Disability Insurance Benefits ("DIB") on April 19, 1994.[1] (R. 23, 119–21.)[2] Plaintiff alleged that he was unable to work because of disabling asthma, ulcer and sinus conditions which began December 30, 1989. (R. 119, 164.) Plaintiff was insured for purposes of entitlement to DIB through March 31, 1993. (R. 133.)

Plaintiff's applications, and timely request for reconsideration, were denied by the Commissioner. (R. 122–26, 128–30, 193, 194.) Upon Plaintiff's timely request (R. 131), a hearing was held—wherein Plaintiff was represented by an attorney—before Administrative Law Judge Christine Holtz (the "ALJ") on September 29, 1995. (R. 46–97.)

On February 23, 1996, the ALJ entered her decision. (R. 19–30.) The ALJ found that Plaintiff met the disability insured status requirements from December 30, 1989 until March 31, 1993. (R. 28.) Prior to March 31, 1993, the ALJ found, however, that Plaintiff was not disabled. (R. 29.) The ALJ found that, during that time, Plaintiff was not precluded from performing his past relevant work as a medical technician. (R. 29.)

The ALJ further found that, beginning November 8, 1993, Plaintiff had a disability in that Plaintiff's asthma met the requirements of § 3.03B of the Listing of Impairments in Appendix I, Subpart P of the regulations. (R. 29.) The ALJ found, however, that as of December 7, 1994, the medical evidence established that Plaintiff's medical condition had improved and that Plaintiff had the residual functional capacity to perform the physical exertion requirements of medium work that did not involve exposure to significant amounts of pulmonary irritants.

DIB status during that period of disability. *See* 20 C.F.R. §§ 404.131, 404.315.

2. References are to the certified administrative record prepared by the Commissioner and filed with this court pursuant to 42 U.S.C. § 405(g).

(R. 29.) The ALJ stated that as of December 7, 1994 Plaintiff could perform his past relevant work as a medical technician. (R. 29.)

The ALJ's decision thus was that: (1) Plaintiff was not entitled to DIB or Medicare coverage because the ALJ first found Plaintiff to be disabled seven months after his insured status expired; and (2) Plaintiff was eligible for SSI benefits from November 8, 1993 to December 7, 1994 (with this eligibility ending with the close of February 1995, the second month following the month in which the disability ceased). (R. 24, 30)

On April 9, 1997, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 4.) Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## BACKGROUND

### I. PLAINTIFF'S TESTIMONY

Plaintiff was born on February 19, 1945 and, therefore, was 50 years old at the time of the administrative hearing. (R. 119.) Plaintiff testified that he presently lived alone and took care of his own chores, grocery shopping and cooking. (R. 74–75.)

From 1980 to 1983, Plaintiff worked at Chicago Rawhide. (R. 62.) That work required Plaintiff to be on his feet most of the day and to sometimes lift 50 pounds. (R. 63–64.) From about 1985 to 1987, Plaintiff worked at Crescent Wall making window frames. (R. 61.) This job required standing, walking and lifting from thirty to forty pounds. (R. 61–62.) Plaintiff also did some temporary factory work through Manpower. (R. 60, 90–92.)

From December 1987 through October 1988, Plaintiff worked as a medical tech trainee at Elgin State Hospital. (R. 60.) As a medical tech trainee, Plaintiff checked up on and assisted patients and cleaned the facilities. (R. 60.) Plaintiff testified that, at

3. Plaintiff was discharged from this position because he failed to report a misdemeanor convic-

his medical tech trainee position, his eight hour work day consisted approximately of one to one-and-a-half hours of sitting, one hour standing and four to five hours of walking. (R. 85–88.) Plaintiff testified that the job did not involve a lot of lifting, but that occasionally he would have to lift up to ten pounds. (R. 89.) [3]

In May 1993, Plaintiff took a job at Omni Super Store. (R. 56.) Plaintiff's job at Omni consisted mostly of cleaning. (R. 56.) Plaintiff quit working at Omni after three weeks because he could not do the work there, e.g., he became short of breath. (R. 56–58.) Omni was Plaintiff's last income. (R. 56.)

### II. MEDICAL EVIDENCE

Plaintiff's medical evidence reflects ulcer problems. In November 1990, Plaintiff was hospitalized for seven days with severe abdominal pain and was diagnosed with acute acid peptic disease on top of chronic peptic ulcer disease ("PUD"). (R. 197.) Plaintiff received medication upon discharge. (R. 197.) On April 17, 1991, Plaintiff suffered a recurrence of duodenal ulcer pain. (R. 210.)

On August 30, 1991, Mohamed Rahman, M.D., reiterated Plaintiff's peptic ulcer diagnosis and reported that Plaintiff was "currently under control with medication." (R. 211.) In April 1992, Sanja Ivanovich, M.D., stated that, upon examining Plaintiff and reviewing his medical records, Plaintiff did not have "any physical condition or limitation related to sitting, standing, walking, lifting, hearing or speaking." (R. 215.)

In September 1992, a hospital examination found that Plaintiff had a "mild scar deformity involving the duodenal bulb consistent with prior peptic ulcer disease." (R. 235–38.) On January 19, 1993, Dr. Ivanovich characterized Plaintiff's ulcer as "stable." (R. 248.) From March 28, 1993 until April 4, 1993, Plaintiff was hospitalized with acute pancreatitis and anemia. (R. 216.) Plaintiff had a recurrence of acute pancreatitis on April 9, 1993. (R. 230.) On August 9, 1993, Dr. Ivanovich reported "resolving" peptic ulcer disease. (R. 246.)

tion on his application. (R. 59.)

Plaintiff's medical evidence additionally reflects sinus problems. On July 23, 1991, Plaintiff was seen at an emergency room reporting a difficulty breathing through his nostrils. (R. 212.) Plaintiff reported that he suffered similar problems in the past but that he was able to breath through his mouth. (R. 212.) Plaintiff was diagnosed with an acute exacerbation of nasal polyps. (R. 212.) On January 19, 1993, Dr. Ivanovich noted that Plaintiff had a sinus problem which was diagnosed as an upper respiratory infection. (R. 248.)

On November 8, 1993, Plaintiff reported shortness of breath and wheezing. (R. 246.) Dr. Ivanovich diagnosed Plaintiff with chronic obstructive pulmonary disease ("COPD") and prescribed a Ventolin inhaler. (R. 246.) Plaintiff saw Dr. Ivanovich again on January 31, 1994 and February 28, 1994 regarding breathing problems. (R. 242–44.) On February 28, 1994, Dr. Ivanovich diagnosed Plaintiff with acute exacerbation of bronchial asthma and COPD. (R. 242.) Dr. Ivanovich again prescribed a Ventolin inhaler. At a follow-up appointment with Dr. Ivanovich on March 7, 1997, Plaintiff reported to be "feeling much better." (R. 241.)

On April 25, 1994, Plaintiff had his first emergency room visit for breathing difficulty. (R. 254.) Plaintiff received three Ventolin nebulizer treatments leading to "significant relief." (R. 255.) Between May 16 and 18, 1994, Plaintiff was rehospitalized with an acute exacerbation of asthma. (R. 260–62.) On June 17, 1994, D. Mehta, M.D., reviewed Plaintiff's pulmonary function study results and found them indicative of a mild restrictive and obstructive defect with a significant bronchodilator response. (R. 264.) On July 13, 1994, Plaintiff had another acute asthma attack requiring emergency room treatment. (R. 269–71.)

On October 6, 1994, Dr. Hosan reported a diagnosis of COPD, PUD and sinusitis. (R. 272.) Dr. Hosan commented that Plaintiff became short of breath on walking one block and lifting and carrying loads. (R. 272.)

On October 17, 1994, Plaintiff had another acute asthma attack requiring emergency room treatment. (R. 277.) Again, between November 24 and November 28, 1994, Plaintiff was treated for an acute exacerbation of asthma. (R. 290–91.) Treatment notes from December 7, 1994 show that Azmacort was added to Plaintiff's medication regime and that Plaintiff's "bronchial asthma [was] stable" and Plaintiff had no complaints. (R. 299.) [4]

On January 27, 1997, Dr. Hosan filled out a "Residual Functional Capacity Questionnaire." Therein, Dr. Hosan reported that he had been treating Plaintiff since October 6, 1994 and that Plaintiff's symptoms—severe shortness of breath, dyspnea on exertion, chest tightness, wheezing and coughing—were "steadily progressing." (R. 10, 13.) Dr. Hosan diagnosed Plaintiff with emphysema, PUD and osteoarthritis in his joints. (R. 10.) In an eight hour work day, Dr. Hosan postulated that Plaintiff could stand and walk less than 2 hours and sit at least six hours (with frequent changes of position and not more than one hour at a time). (R.11.) Dr. Hosan limited Plaintiff's ability to lift and carry to less than ten pounds occasionally. (R. 12.) Dr. Hosan stated that there was no period of time since the onset of his treatment in October 6, 1994 when the limitations set out in his report would not have been consistent with Plaintiff's condition. (R. 13.) Dr. Hosan's residual function capacity assessment was first submitted to the Appeals Counsel and, therefore, played no part in the ALJ's decision.

## LEGAL STANDARDS

### I. STANDARD OF REVIEW.

Judicial review of the Commissioner's final decision is limited. The Social Security Act, at 42 U.S.C. § 405(g), establishes that the Commissioner's findings as to any fact are conclusive if they are supported by "substan-

---

4. Plaintiff did not submit any additional medical treatments records after December 1994 although Plaintiff asserted that he had regularly seen the doctor who took over for Dr. Ivanovich. (R. 325.) Plaintiff asserts that he requested rec-

ords from this doctor, Dr. Fidai, but apparently Dr. Fidai would not release his records because of Plaintiff's outstanding payment balance. (R. 325, Pl. Mem. at 11.)

tial evidence." *See also Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir.1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brewer,* 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer,* 103 F.3d at 1390. Conclusions of law are not entitled to deference, however. Therefore, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997).

## II. *STATUTORY AND REGULATORY FRAMEWORK.*

To receive disability benefits, a SSI or DIB claimant must be "disabled" as defined by the Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993). An individual is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). *See also Jones v. Shalala,* 10 F.3d 522, 523–24 (7th Cir.1993). To satisfy this definition, an individual must have a severe impairment that renders him unable to do his previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he or she is, the claimant is not disabled, and the evaluation process is over; if he or she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "signifi-

cantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations, 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *See, Brewer,* 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of her past work. RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling 96–8p (1996). If the claimant can perform her past relevant work, she will be found not disabled. *See* 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant—in light of her age, education, job experience and functional capacity to work—is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer,* 103 F.3d at 1391.

### *ANALYSIS*

Plaintiff essentially raises three issues before this court. First, Plaintiff argues that the ALJ erred in finding that Plaintiff was not eligible for DIB benefits on the ground that Plaintiff was not disabled on or before March 31, 1993 (which was the date Plaintiff's insured status for DIB benefits terminated). Second, Plaintiff argues that, after finding Plaintiff's asthma constituted a disability as of November 8, 1993, the ALJ erred in finding that, as of December 7, 1994, Plaintiff's condition had medically improved and that Plaintiff could perform his past relevant work. Third, Plaintiff argues that the Appeals Counsel committed legal error in denying review when it found certain new evidence submitted by Plaintiff (Dr. Hosan's

Residual Functional Capacity report) to be immaterial. As will be seen, this court finds it necessary only to address the first and third issues here.

## I. *THE DATE OF DISABILITY ONSET.*

The ALJ found that Plaintiff was not disabled on or before March 31, 1993. Plaintiff argues that the ALJ erred in so finding. Plaintiff predominately argues that, in finding Plaintiff not disabled as of March 31, 1993, the ALJ failed to comply with the requirements of Social Security Ruling 83–20 ("SSR 83–20").

SSR 83–20—which is binding on all components of the Social Security Administration, *see Lichter v. Bowen,* 814 F.2d 430, 434 n. 5 (7th Cir.1987)—addresses the manner in which an ALJ determines the onset of a disability. SSR 83–20 states that "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] for a continuous period of at least 12 months or result in death."

SSR 83–20 states that, in disabilities of nontraumatic origin, the determination of onset involves consideration of three factors: (1) the applicant's allegations; (2) the work history; and (3) the medical and other relevant evidence. SSR 83–20 has specific instructions where precise evidence is not available and, as here, the ALJ needs to infer the onset-of-disability date (with emphasis added):

> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate basis. *At the hearing, the administrative law judge should call on the services of a medical advisor when onset must be inferred.*

■ Here, the ALJ found that Plaintiff was first disabled as of November 8, 1993

without reference or citation to SSR 83–20 (R. 26) and without calling on the services of a medical advisor. Although the ALJ correctly noted that Plaintiff was first formally diagnosed with asthma on November 8, 1993, there is other evidence in the record which could at least potentially infer that an earlier date than November 8, 1993 was the correct disability onset date. For example, Plaintiff testified that he took a job at the Omni Superstore in May of 1993 but quit after three weeks because he became short of breath (with Omni being his last income). (R. 56–58.) And Plaintiff presented additional medical evidence reporting some respiratory impairment even well prior to May, 1993. On July 23, 1991, Plaintiff was seen at an emergency room reporting difficulty breathing through his nostrils. (R. 212.) He also then reported that he suffered similar problems in the past although he was able to breath through his mouth. (R.212.) At that time, Plaintiff was diagnosed with an acute exacerbation of nasal polyps. (R. 212.) On January 19, 1993, Dr. Ivanovich noted that Plaintiff had a sinus problem which was diagnosed as an upper respiratory infection. (R. 248.)

As set forth above, when the date of onset must be inferred, SSR 83–20 states that the ALJ should seek the services of a medical advisor. The Seventh Circuit has observed this rule. *See, e.g., Lichter,* 814 F.2d at 434. Indeed, some courts have explicitly held that the services of a medical advisor are mandated in such instances. *See, e.g., Bailey v. Chater,* 68 F.3d 75, 79 (4th Cir.1995); *Spellman v. Shalala,* 1 F.3d 357, 363 (5th Cir. 1993); *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir.1991).

In view of the foregoing, therefore, the court remands this case so that the ALJ may follow the guidelines set forth in SSR 83–20, including calling on the services of a medical advisor to assist in making the onset-of-disability determination.[5]

5. Plaintiff also argued that Plaintiff had additional impairments which demonstrated a disability prior to March 31, 1993 (*e.g.,* peptic ulcer disease colon spasms and pancreatitis). (Pl. Mem. at 10.) This court finds that the ALJ's decision that those impairments did not meet the listing requirements to constitute a disability was supported by substantial evidence.

## II. *MATERIALITY OF NEWLY SUB-MITTED EVIDENCE.*

The ALJ found that Plaintiff's asthma constituted a disability as of November 8, 1993. The ALJ further found, however, that Plaintiff's asthma condition showed medical improvement allowing him to perform medium work, including his past relevant work as a medical tech trainee, as of December 7, 1994 (so long as the work did not involve exposure to significant amounts of pulmonary irritants).[6] (R. 29.) After the ALJ issued her decision, Plaintiff's counsel submitted additional evidence—a "Physical Residual Functional Capacity Questionnaire" by Dr. Hosan (the "Hosan Report") dated January 27, 1997—to the Appeals Council. (R. 10–13.) Plaintiff argued to the Appeals Counsel that this report demonstrated that Plaintiff's asthma did not medically improve in December of 1994 (as the ALJ had determined). (R. 7–8.)

In denying Plaintiff's request for review, the Appeals Council stated:

> The Appeals Council also reviewed [the Hosan Report]. The Administrative Law Judge ruled on the issue of disability in your case only through February 23, 1996, the date of the decision. This later information, provided by Dr. Hosan, is not material to the issue of whether you were disabled beginning on or before February 23, 1996.

(R. 4.) Plaintiff avers that the Appeals Council made a legal error in denying review when it determined that the Hosan Report was immaterial.

■ Where, as here, the Appeals Council has denied review and the ALJ decision is the final decision, it is ordinarily improper for a court to consider new evidence not presented to the ALJ because "the correctness of that decision depends on the evidence that was before the [ALJ]." *Eads v. Secretary of the Dept. of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir.1993). *See also Diaz v. Chater,* 55 F.3d 300, 305 n. 1 (7th Cir.1995). Nevertheless, a court may conduct a limited review of new evidence where the claimant alleges that the Appeals Coun-

cil's denial of review rests on a mistake of law. *Eads,* 983 F.2d at 817; *Vadeboncoeur v. Callahan,* 976 F.Supp. 751, 757 (N.D.Ill. 1997). In addition, pursuant to the sixth sentence of 42 U.S.C. § 405(G), this court may remand the case for consideration of new and material evidence. *See Eads,* 983 F.2d at 817.

■ The regulations require the Appeals Council to review new evidence if the evidence is "material" and "relates to the period on or before the date of the administrative law judge hearing decision." *See* 20 C.F.R. § 416.1470(b). To establish materiality, a plaintiff must show a "reasonable probability" that the ALJ would have reached a different disposition of the disability claim if presented with the new evidence. *See Sample v. Shalala,* 999 F.2d 1138, 1144 (7th Cir. 1993) (quoting *Sears v. Bowen,* 840 F.2d 394, 400 (7th Cir.1988)).

■ In the January 1997 Hosan Report, Dr. Hosan stated that he had been seeing [Plaintiff] since 10–6–94 and his symptoms— severe shortness of breath, dyspnea on exertion, chest tightness, wheezing and coughing—are "steadily progressing." (R. 13.) In answer to a question regarding whether there had been "any period of time since [10–6–94] when the limitations set out in [Dr. Hosan's] report would not have been consistent with [Plaintiff's] condition," Dr. Hosan answered, "No." (R. 13.) In his report, Dr. Hosan delineated physical limitations with respect to Plaintiff's work capabilities. Dr. Hosan postulated that, during an eight-hour work day, Plaintiff could sit at least six hours (with frequent changes of position and not more than one hour at a time) and stand and walk less than two hours. (R. 11.) Dr. Hosan limited Plaintiff's ability to lift and carry to less than ten pounds occasionally. (R. 12.) By way of comparison, the ALJ determined that as of December 7, 1994, Plaintiff could perform his past relevant work as a medical technician. (R. 29.) According to Plaintiff's evidence, however, that medical technician job required five to six

---

**6.** Accordingly, as stated, the ALJ ruled that Plaintiff's disability for SSI benefits ceased on December 7, 1994.

hours of walking and standing and one to one-and-a-half hours of sitting in Plaintiff's eight hour work day. (R.85–88.) Too, Plaintiff would occasionally have to lift ten pounds on that job.

Plaintiff argues that there is a "reasonable probability" that consideration of the Hosan Report would change the outcome of the ALJ's decision (that Plaintiff's medical condition had improved as of December 7, 1994 and that Plaintiff was then capable of performing medium work, including his past relevant work as a medical tech trainee, without exposure to excessive pulmonary irritants (R. 29)).

Based on the foregoing, this court agrees with Plaintiff and finds that the Appeals Counsel committed legal error in failing to consider the Hosan report. The ALJ issued her decision February 23, 1996 ruling that the disability of the Plaintiff in question ceased on December 7, 1994. Hosan's report states, however, that Plaintiff's relevant symptoms, rather than medically improving, were "steadily progressing" from October 6, 1994 to the date of his report, January 27, 1997.

In these circumstances the new evidence is clearly material and clearly relates to the period on or before the February 1996 date of the ALJ's hearing decision. A "reasonable probability" has been shown that the ALJ would have reached a different disposition of the subject disability claim if presented with the new evidence.

The court therefore remands this matter for consideration of the Hosan Report.[7]

### CONCLUSION

Accordingly, Plaintiff's motion for summary judgment is denied and Plaintiff's request for a remand is granted. The cause is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.

---

7. Plaintiff raised additional arguments that the ALJ's findings that Plaintiff's asthma had medically improved as of December 7, 1994 and that Plaintiff could perform his past relevant work as of that date were unsupported by substantial evidence. Because the court deems it necessary to remand this case for a determination of whether consideration of the Hosan Report alters those findings, the court does not deem it necessary to consider whether the ALJ's initial finding (without the benefit of the Hosan Report) was supported by substantial evidence.