Thomas SELBY, Jr., Plaintiff–
Appellant,

v.

Jo Anne B. BARNHART, Commis-
sioner of Social Security, De-
fendant–Appellee.

No. 02–1254.

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 2002.

Decided Aug. 8, 2002.

Before COFFEY, KANNE, and ROVNER, Circuit Judges.

## ORDER

Thomas Selby applied for Social Security benefits, alleging disability due to a brain tumor. The administrative law judge (ALJ) concluded that Selby was not disabled and could return to his past job as a toll booth attendant, and the Appeals Council denied Selby's request for review. Selby now appeals from the district court's judgment upholding the denial of benefits. Because the ALJ's decision is not supported by substantial evidence, we vacate the judgment of the district court and remand the case to the agency for further proceedings.

## I. Background

Selby was born in 1941, and is a high school graduate who has worked in the past as a toll booth attendant. He last worked in December 1996, when he reported to neurologist Virgil DiBiase that he had been experiencing weakness in his left foot, that the foot slapped down when he walked, and that he could not wiggle his toes. He also told Dr. DiBiase that, as a toll booth attendant, he had to stand "all day long" and had to lean on his left foot. Dr. DiBiase's initial impression was that Selby had a "left foot drop most likely secondary to left peroneal neuropathy with compression at the fibular head." The doctor ordered a variety of tests plus physical and occupational therapy with fitting for a leg brace.

In February 1997 Dr. DiBiase observed that Selby's left foot drop was "improving slightly" but that he still had "considerable [foot] weakness." Dr. DiBiase noted that Selby "remains off work as he is unable to stand for prolonged periods with this problem."

After a followup visit in March 1997 revealed that Selby had progressive weakness, Dr. DiBiase ordered further tests, including an MRI. The MRI showed that Selby had a large meningioma in the fronto-occipital region of the brain. Upon this discovery Dr. DiBiase referred Selby to neurosurgeon Leonard Cerullo, who started Selby on anti-convulsant medication and recommended open surgery to debulk or remove the tumor mass. Dr. Cerullo also observed that Selby had a "left spastic monoparesis involving the lower extremity."

In April 1997 Selby underwent a craniotomy to resect the tumor. His surgeon was Dr. Edward Mkridichian, who noted that Selby tolerated the procedure very well. During a followup visit in May, Dr. Mkridichian observed that, although Selby

still had left foot weakness, it was "significantly improved" from the preoperative level, and the rest of Selby's neurological testing was "grossly within normal limits." The next month, Selby had a followup visit with Dr. DiBiase, who noted that Selby was "doing markedly better" since his surgery, that his left foot strength and foot drop were "markedly improved," and that he had not had any seizures.

In September 1997 Selby had a consultative physical examination with a Dr. Syed Moeed. According to Dr. Moeed's notes, Selby reported that, though the numbness in his foot had improved since the surgery, he still felt residual numbness in his last three toes. Dr. Moeed observed that Selby had a normal gait, a full range of movements in all joints, and normal muscle tone and strength, but also had focal seizures in his left leg.

Dr. Mkrdichian examined Selby again in September 1997 and noted that, except for lingering left foot weakness, Selby's neurological exam was "grossly within normal limits." An MRI showed no recurrence of the tumor, and Dr. Mkrdichian's impression was that Selby was "doing very well."

In March 1998, however, Selby suffered a seizure, and he underwent a repeat MRI. which showed tumor recurrence. Neurosurgeon Thomasz Helenowski recommended gamma knife radiosurgery to decrease the growth of the tumor. The surgery was performed in April 1998, but seven months later Selby reported that he continued to have problems with his left leg. Specifically, according to Dr. Helenowski's November 1998 notes, Selby had an "alteration in sensation associated with curling up of his toes and inversion and eversion of the left foot." Selby's leg would also become stiff in cold weather. Dr. Helenowski surmised that there was "a possibility that [these symptoms] indicate[ ] focal seizure activity[,] which is not

completely controlled with the [anti-convulsant medication] Tegretol." But other than the focal seizures, Dr. Helenowski noted that Selby was recovering well–he was able to walk independently and was alert and independent in his personal self–care–and concluded that Selby "appear[ed] to be following a stable course with no evidence of intracranial tumor progression at this time." Dr. Helenowski also concluded, however, that due to Selby's "condition and subsequent treatments, he has been disabled since December, 1996." The doctor further stated that it was not possible to give a return-to-work date.

Dr. Helenowski examined Selby again in March 1999. He observed that Selby continued to have occasional left hand and foot twitches but was otherwise normal. An MRI revealed no progression of the tumor.

Selby initially applied for benefits in July 1997, alleging a disability onset date of December 3, 1996. A hearing was held in November 1998, during which Selby testified that he still had trouble standing and walking because numbness in his left foot caused him to lose his balance. He also complained of occasional foot and hand seizures, which he said were not completely controlled by his medication.

After the hearing the ALJ sent a letter to Dr. Helenowski, asking him to elaborate on Selby's condition. Specifically, the ALJ's letter stated:

[Selby] has furnished me a copy of your November 2, 1998 letter offering the opinion that he has been disabled since December 1996. I also have a letter from Dr. Mrkdichian dated September 10, 1997[,] to Dr. DiBiase offering the impression that the claimant was "doing very well" at that time.... I would appreciate it if you could explain the apparent conflict between your two opinions.

In May 1999 Dr. Helenowski replied that, "due to the fact [Selby] has a past history of brain tumor," he would be "disabled for life."[1] Dr. Helenowski also offered to provide further information if the ALJ sent him "specific requests."

In a June 1999 decision, the ALJ concluded that Selby was not disabled because he retained the residual functional capacity to perform light work. In so holding, the ALJ relied heavily on the opinions of two non-examining state agency physicians, who found nothing in Selby's file to indicate that his condition was so severe to be considered disabling. The ALJ gave little, if any, weight to Dr. Helenowski's opinions that Selby was disabled because, the ALJ said, those opinions were inconsistent with the evidence as a whole, which showed that Selby "recovered fairly well" after his surgeries. The ALJ also concluded that Selby's own testimony that he was unable to return to work was not credible in light of his description of his daily activities–namely, that he could drive, occasionally do some cooking and the dishes, watch television, and visit with friends and family a couple of times a week.

In August 1999 Selby filed a timely request for review with the Appeals Council. He later submitted new evidence in support of his request–a December 1999 letter from Dr. Helenowski to Dr. DiBiase, reporting that an MRI scan indicated "definite progression" of Selby's meningioma compared to the MRI of March 1999. Dr. Helenowski also noted Selby's complaints of increased left-lower extremity stiffness and concluded that "there appears to be a progression of the patient's . . . meningio-

ma again at this time. The increased size of the lesion is most likely causing the difficulty with the patient's walking. With the progressive tumor, which is recurrent at this time, and his increased problems with his lower extremities, I feel that the patient is disabled from working."

In April 2000 the Appeals Council denied Selby's request for review, concluding that, even considering the new evidence, there was no basis for overturning the ALJ's decision. The district court affirmed the denial of benefits, and this appeal followed.

## II. Discussion

An ALJ's finding of no disability must be supported by substantial evidence, *i.e.*, enough evidence for a reasonable person to accept as adequate to support the conclusion. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir.2000). The reviewing court examines the entire record but may not reweigh the evidence, decide the facts anew, resolve questions of credibility, or substitute its judgment for that of the Commissioner. *Id.* Although the ALJ need not address every piece of testimony or evidence, he must articulate, at some minimum level, his analysis of the evidence so that the reviewing court can follow his reasoning. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir.1995).

### A. The ALJ erred in discrediting the opinions of Dr. Helenowski.

■ The ALJ did not adequately articulate his reasons for rejecting Dr. Helenowski's November 1998 and May 1999 opinions that Selby was "disabled."[2] A

---

**1.** This is the ALJ's own interpretation of Dr. Helenowski's reply letter, which is somewhat difficult to follow.

**2.** As we have said before, a physician's opinion that a claimant is "disabled" or "unable to work" is not *conclusive* on the ultimate

issue of disability, which is reserved to the Commissioner. *Clifford*, 227 F.3d at 870. But the ALJ must still consider the physician's opinion, and if the ALJ decides not to credit it, he must give reasons for not doing so. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.

treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight so long as it is supported by medical evidence and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Clifford*, 227 F.3d at 870. Here, the ALJ discredited Dr. Helenowski's opinions because the ALJ thought them to be "inconsistent with the treatment records showing fairly good recovery after [Selby's] surgeries." The ALJ specifically cited Dr. Mkrdichian's September 1997 notes reporting that Selby had significantly improved following surgery and that except for left foot weakness he was neurologically intact; Dr. Helenowski's March 1999 notes indicating that Selby had no new neurological problems and continued to follow "a stable course with no evidence of intracranial tumor progression at this time"; and Dr. Helenowski's November 1998 and March 1999 observations that Selby could walk independently and had no speech or memory problems. The ALJ also noted that the non-examining state agency physicians who reviewed Selby's file concluded that he had no restrictions that would prevent him from working.

It is true that the medical evidence cited by the ALJ—as well as that cited at length in the Commissioner's appeal brief—generally shows that Selby was recovering well from his surgeries. But the ALJ does not explain how that evidence necessarily contradicts Dr. Helenowski's opinions that Selby was disabled; it does not logically follow that, because Selby had "fairly good recovery" following major brain surgery, he was ready to return to work. *See Clifford*, 227 F.3d at 870–71 (remanding for ALJ to reevaluate whether treating physician's findings of disabling symptoms were entitled to controlling weight, where

1999); *Allen v. Weinberger,* 552 F.2d 781, 785

ALJ did not adequately explain why those findings were necessarily inconsistent with other medical evidence of record). Rather, as Selby rightly points out, that the surgeries restored his ability to walk unaided by a brace and improved the weakness in his foot does not mean that he had no residual symptoms. Indeed, even after he underwent the April 1997 craniotomy, Selby continued to suffer from left foot weakness, left foot numbness, and focal seizures in his left leg. Moreover, though the ALJ seemed to place heavy weight on Dr. Mkrdichian's September 1997 report that Selby was recovering well from the surgery, the ALJ failed to mention that six months later Selby suffered a seizure due to tumor recurrence, necessitating a second surgery in April 1998. And Selby's symptoms did not abate even after this surgery; he continued to complain of focal seizures in his left hand and foot, and reported that his leg would become stiff and start to shake in cold weather

■ In rejecting Dr. Helenowski's opinions, the ALJ also seemed to rely too heavily on the non-examining physicians' findings that Selby had no restrictions that would prevent him from working. The regulations expressly provide that the ALJ must give more weight to the opinion of an examining source (especially a treating one) than to a non-examining source. 20 C.F.R. § 404.1527(d); *see also Moore v. Barnhart,* 278 F.3d 920, 924 (9th Cir.2002) (ALJ can only reject an examining physician's opinion for reasons supported by substantial evidence in the record; contradictory opinion of non-examining physician does not, by itself, suffice); *Lauer v. Apfel,* 245 F.3d 700, 705 (8th Cir.2001) (opinion of consulting physician is generally not considered to be substantial evidence, especially if that opinion is contradicted by a

(7th Cir.1977).

treating physician). Furthermore, the weight given the opinion of a non-examining source depends on "the degree to which [the source] provide[s] supporting explanations," 20 C.F.R. § 404.1527(d)(3), and the state agency physicians here gave no explanation whatsoever to support their findings; instead, they simply signed off on the disability examiner's conclusions.

Granted, the opinions of the treating physician, Dr. Helenowski, are also unspecific–he states only in general terms that Selby is disabled due to his "condition and subsequent treatments" and "past history of a brain tumor." But the ALJ has a duty to develop a full and fair record, *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir.2000), so if he thought that Dr. Helenowski's opinions were overly broad, he should have asked for clarification. *See id.* (ALJ should gather additional medical evidence if he believes that the evidence of record is insufficient to enable him to make a disability determination). In fact the ALJ stated at the hearing that he was going to write to Selby's doctor for more "detail," but though he did later send a letter to Dr. Helenowski asking him to generally elaborate on Selby's condition, he never asked for any specific information about the symptoms that Selby complained of. Dr. Helenowski's response was therefore equally general–he replied that Selby would be "disabled for life" due to his "past history of a brain tumor." If the ALJ thought that this response was inadequate, he had the obligation to ask for

further detail. *See id.* The ALJ's failure to meet this obligation--especially considering that the doctor offered to provide more information in response to "specific requests"--is cause for remand. *See id.* at 437–38.

### B. The ALJ improperly rejected Selby's complaints of disabling symptoms.

■ The ALJ further erred in discrediting Selby's own testimony regarding the effect his symptoms have on his ability to work. Though Selby testified that he had trouble standing and walking because of focal seizures and numbness in his foot, the ALJ found his statements to be "not entirely credible in light of the claimant's own description of his activities and life style"–namely, that he could drive, occasionally do some cooking and the dishes, watch television, and visit with friends and family.[3] The ALJ then concluded that Selby was able to stand and walk without significant limitation. But as this court held in *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001), involvement in minimal daily activities does not necessarily contradict a claim of disabling pain.[4] *See also Clifford*, 227 F.3d at 871–72. The ALJ must therefore explain *how* the allegation of pain is inconsistent with the claimant's activities of daily living, with due regard to the full range of medical evidence. *See Zurawski*, 245 F.3d at 887; *Clifford*, 227 F.3d at 871–72. Here, the ALJ's decision does not reveal that he considered the full

3. This description of Selby's daily activities appears to come from the form he submitted in the preliminary stage of his application for benefits. The ALJ cites to the hearing "testimony," but a review of the transcript reveals that there was no testimony to that effect.

4. The Commissioner believes that *Zurawski* is limited to situations where the claimant is alleging disability "based on a factor as thoroughly subjective as pain." She therefore

argues that *Zurawski* does not apply here because Selby complains of *numbness* rather than pain, and because his complaints contradict his doctors' opinions that he was "doing very well." The Commissioner is splitting hairs by trying to draw this distinction. Moreover, as discussed above, Selby's complaints of residual symptoms are not inconsistent with the objective medical evidence.

range of medical evidence in evaluating Selby's complaints. The ALJ merely states that the "medical evidence suggests only a moderate degree of impairment with the claimant repeatedly being found capable of performing at least light exertion." But the evidence the ALJ cites–Dr. Helenowski's March 1999 treatment notes–does not contradict Selby's testimony that he had trouble standing and walking because of the focal seizures and numbness in his foot. Those notes in fact support Selby's allegation of foot and hand seizures. And there is additional medical evidence to support Selby's claim–the progress notes of many of the treating physicians document the same symptoms that Selby complained of at the hearing. The ALJ should have considered all this evidence before deciding to discount Selby's testimony in its entirety. *See Zurawski,* 245 F.3d at 887; *Clifford,* 227 F.3d at 871–72. Because he failed to do so, we have no basis to sustain his credibility determination.

### C. The ALJ mischaracterized the nature of Selby's past job requirements.

■ The ALJ erred in yet another regard–he did not accurately describe the requirements of Selby's past job. The ALJ concluded that, in Selby's "former job as a toll booth attendant," he was only "required to perform fairly light duty work" and was "not required to lift more than 20 pounds." It is unclear, however, how the ALJ arrived at these conclusions. The ALJ never questioned Selby about the requirements of his past job. Moreover, in Selby's initial application for benefits, he describes his former work as requiring him to lift and carry up to *fifty* pounds,[5]

which would have taken the job out of the light-work category as defined in the regulations. 20 C.F.R. § 404.1567.

The Commissioner argues that the ALJ's decision, when properly characterized, was that Selby could return to his past job, not as he "actually performed it," but as it is "generally performed in the national economy." *See* SSR 96–8p, 1996 WL 374184, at *4 (S.S.A.1996). She therefore maintains that, because the job of toll booth attendant is generally classified by the Dictionary of Occupational Titles (DOT) as "light" in exertion, it is irrelevant that Selby's own description of his past work indicated that he had to lift up to fifty pounds. But as Selby points out, the ALJ never took administrative notice of the DOT or of any other vocational materials, and otherwise did not discuss how the job of tollbooth attendant is generally performed in the national economy. Further, the ALJ's choice of language does not fairly support the Commissioner's characterization. The ALJ's exact statements were that "[i]n his former job as a toll booth attendant, the claimant was required to perform light duty work," and that "[i]n his former job as a toll booth attendant, the claimant was not required to lift more than 20 pounds." The only plausible reading of these statements is that the ALJ chose to categorize Selby's past work as "light" based on Selby's own description of the work *as he actually performed it,* not as it is generally performed in the economy.

We stated in *Sample v. Shalala,* 999 F.2d 1138, 1143 (7th Cir.1993), that an ALJ must consider a claimant's characterization of his past work if it is uncontradicted (as it is here). Thus, in this case, if the ALJ thought that Selby's characteriza-

---

5. The record is missing the page of the application that identifies the job Selby is describing. The Commissioner concedes, however,

that the description was most likely of Selby's toll booth attendant job.

tion was not credible, he should have explained *why*; that the description might be inconsistent with how Selby's job is generally performed in the economy is not alone determinative. *See id.* The ALJ, however, gave no explanation whatsoever how he arrived at the conclusion that Selby's past work was "light" in exertion. His decision therefore lacks substantial evidence to support it.

### D. Selby's argument that he was denied his right to counsel lacks merit.

Finally, Selby argues that he was effectively denied his right to be represented by counsel at his hearing. In a bizarre sequence of events, Selby retained an attorney named William Suarez to represent him during the administrative proceedings, but brought another individual–who Selby concedes was an attorney–to the hearing. The ALJ, however, apparently thought that this "unnamed individual" was Suarez and did not ask him to identify himself for the record. The hearing transcript also names Suarez as "attorney for the claimant."

Selby now maintains that the "unnamed individual" was not his attorney of choice and therefore that he was denied his right to counsel. This argument is frivolous. Selby was advised of his right to representation, and by his own volition brought the "unnamed" attorney to represent him at the hearing. He cannot now argue that that attorney was somehow not of his choice. Notably, Selby did not object to the validity and quality of the representation until after he received an unfavorable decision from the Appeals Council.[6]

---

6. Selby also argues that his procedural rights were violated because the ALJ did not provide him or attorney Suarez with a copy of Dr. Helenowski's May 1999 letter. This argu-

### III. Conclusion

The ALJ's determination that Selby could return to his past work as a toll booth attendant was not supported by substantial evidence. He failed to adequately explain his reasons for rejecting Selby's testimony and the treating physician's opinions of disability, and erred in describing the requirements of Selby's past job. We further note that, though the Appeals Council's denial of Selby's request for review is not subject to judicial scrutiny, *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir.1997), we see no reason why on remand the ALJ could not consider the new evidence Selby submitted with his request.

The judgment of the district court is VACATED, and the case is REMANDED to the agency for further proceedings.

ment is waived because Selby failed to raise it in his opening brief. *Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 n. 2 (7th Cir.2001).